## BIRDSALL ET AL. *v.* COOLIDGE.

1. In an action at law for the infringement of letters-patent, the rule as to the measure of damages is, that the verdict of the jury must be for the *actual* damages sustained by the plaintiff, subject to the right of the court to enter judgment thereon for any sum above the verdict not exceeding three times that amount, together with costs.

2. Where the unlawful acts consist in making and selling a patented improvement, or in its extensive and protracted use, without palliation or excuse, evidence of an established royalty will, in an action at law, undoubtedly furnish the true measure of damages; but where the use is a limited one, and for a brief period, the arbitrary and unqualified application of that rule is erroneous.

ERROR to the Circuit Court of the United States for the District of Nevada.

Submitted on printed arguments by *Mr. C. J. Hillyer* for the appellants, and by *Mr. A. H. Evans* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Juries, in an action at law for the infringement of a patent, are required to find the actual damages sustained by the plaintiff in consequence of the unlawful acts of the defendant. Power is given to the court, in such a case, to enter judgment for any sum above the amount of the verdict, not exceeding three times the amount of the same, together with costs; but the jury are strictly limited in their finding to the actual damages which the plaintiff has sustained by the infringement. 16 Stat. 207; 5 id. 123; Rev. Stat., sect. 4914, p. 960.

Damages are given as a compensation, recompense, or satisfaction to the plaintiff, for an injury actually received by him from the defendant. Compensatory damages and actual damages mean the same thing; that is, that the damages shall be the result of the injury alleged and proved, and that the amount awarded shall be precisely commensurate with the injury suffered, neither more nor less, whether the injury be to the person or estate of the complaining party. 2 Greenl. Ev. (10th ed.) sect. 253.

Improvements in machines for amalgamating gold and silver were made by Zenas Wheeler, then in full life, for which he received letters-patent in due form of law. Sufficient also

appears to show that the patentee subsequently — to wit, on the 15th of August, 1869 — departed this life; that, at the time of his death, he was a resident of San Francisco, in the State of California, and that he left a last will and testament, duly executed, as required by the laws of that State; that he gave, devised, and bequeathed to the plaintiff all and singular his property, real and personal, wheresoever situated, including all debts owing to him, and all moneys belonging to him of which he might die seised and possessed, in trust for certain uses and purposes therein specifically set forth and described, leaving his patent-rights, machinery, and certain other specified interests, in the hands of his executor, to be managed, controlled, improved, changed, or disposed of, as his executor may in his judgment deem best for the interests of the estate. Due probate of the will has since been made, and letters testamentary have been duly granted to the plaintiff, as sole executor of the deceased patentee.

Pursuant to the power vested in the plaintiff as such executor, he instituted the present suit, in which he alleges that the deceased testator was the original and first inventor of the improvement described in the patent, and that the defendants, though well knowing the premises, and in order to deprive the plaintiff of the gains and profits of the same, have, without license from the testator in his lifetime, or from the plaintiff since the decease of the testator, used and caused to be used twenty amalgamating machines, embracing substantially the same improvement, in violation and infringement of the exclusive right secured by the said letters-patent.

Service was made; and the defendants appeared and pleaded the general issue, and gave notice of certain special defences, as follows: 1. That the testator in his lifetime executed a license to J. Booth & Co., to manufacture the patented machine, and that the defendants purchased the machines they use of the licensees. 2. That the patented improvement has been openly and universally used by the public since the patent was granted. 3. That the curved grooves in the face of the muller and in the bottom of the pan had been previously patented to the respective parties named in the notice of special matter. 4. That the patentee was not the original and

first inventor of the improvement. 5. That the curved grooves in the face of the muller and bottom of the pan were in public use more than two years before the alleged inventor made application for a patent. 6. That the patented improvements were described in the printed publications mentioned in the notice of special matter.

Reference to the specification will show that the patented improvement is called a new and improved gold and silver amalgamator and pulverizer, and that the object of the invention, as stated by the patentee, is to obtain a device of simple construction, which will cause a thorough incorporation of the quicksilver with the pulp containing the metal, so as to insure a perfect amalgamation of the latter. Mechanically considered, the invention consists in the arrangement of spiral ribs on the periphery of the rotary muller, and spiral ribs reversed on the inner side of the pan, to operate in connection with curved grooves on the face or under side of the muller, and curved grooves reversed in the bottom of the pan, for the purpose explained.

These explanations are the same as those given in the specification; and the patentee also states, that the invention consists in the manner of connecting the muller to its shaft by a universal joint, so as to insure its parallelism with the bottom of the pan, and in the employment or use of curved plates, which are placed in the pan just above the muller, and arranged in such a manner as to be capable of being adjusted higher or lower, as set forth in the specification.

Two of the claims of the patent — to wit, the first and second — are omitted, as the plaintiff admits that those claims have not been infringed by the defendants. What he charges is, that they have infringed the third claim, which is as follows: "In combination with the muller and pan, the curved plates supported at their outer ends on slides, and at their inner ends in a frame, which is supported on the upper end of the shaft in such a manner that the plates will follow any adjustment of the muller, and thus bear the same relation to it, whether in its highest or lowest working position."

Viewed in the light of these suggestions, it is clear that the charge of infringement has respect chiefly to the curved plates

supported, as explained, when used in combination with the muller and. pan.

Subsequently the parties went to trial; and the verdict and judgment were for the plaintiff, in the sum of $2,266.66, with costs of suit. Exceptions were duly filed by the defendants, and they sued out the present writ of error.

By the bill of exceptions, it appears that the plaintiff introduced his patent in evidence, together with a model of the patented machine for amalgamating gold and silver, and gave testimony tending to show that the defendants purchased twenty amalgamating pans, which contained wings or curved plates of iron twelve inches wide and fourteen inches long, fastened at one end to the inner side of the rim of the pans in a vertical position, in such a manner that they could be raised or depressed by sliding up or down in a groove or fastening, and could be adjusted at different heights, and extending lengthways towards the centre of the pans, which were a little more than four feet in diameter.

Wings of the kind, however, were used in only sixteen of the pans for a few weeks after the defendants commenced to use the pans for amalgamating purposes; and the defendants testified that the wings were useless, and even detrimental, for working over old tailings, which was the work on which they were engaged, for the reason that such material does not require further grinding or pulverization; that, finding the wings useless or detrimental, they took them out of the sixteen pans, and sold them for old iron.

They also gave evidence tending to show, that, when they used the mill as a quartz-mill, they used the wings in sixteen only of the pans, but that when they commenced to work what are called "tailings," they took out the wings, because they found them to be detrimental or useless; and the bill of exceptions also states that the defendants took the wings out of four of the pans before they used them at all, and only used the wings in some of the other pans for a short time, and that they did not use any of them more than six weeks: which is all the evidence introduced to show the extent of the infringement.

Wide differences of opinion existed between the parties as to the rule of damages in such a case; and, to aid in the solu-

tion of that question, the plaintiff introduced testimony tending to show that the decedent in his lifetime allowed manufacturers to make and sell the invention for a royalty of $100 for a machine containing only the same combination as that used by the defendants, and proved that he, the plaintiff, had sold royalties to a large amount at the same rate.

Questions of various kinds, other than those relating to the measure of damages, are also presented in the bill of exceptions; but the court here, in the view taken of the case, do not find it necessary to decide any other in this investigation.

Instructions as to the measure of damages were given by the court to the jury, in substance and effect as follows: That when a person, without license, appropriates the patented invention of another, the measure of damages, if a royalty has been established, is the regular royalty paid by purchasers and licensees; that, if the jury find for the plaintiff, the damages will be the royalty which the plaintiff established for that part of the invention used by the defendants; that, if the royalty paid for that part of the invention is $100, then the jury will allow $100 *on each pan* used by the defendants, and interest on that sum, at ten per cent per annum, for the time of the appropriation, which is the rate of interest allowed in that State.

Under those instructions the jury returned a verdict for the plaintiff in the sum of $2,266.66, as appears by the record. Seasonable exception was taken to the instructions by the defendants, and that instruction presents the only question which the court deems it necessary to decide in disposing of the case.

Controversies and cases arising under the patent laws are originally cognizable, as well in equity as at law, by the circuit courts, or by any district court having circuit powers. Prior to the passage of the act of the 8th of July, 1870, two remedies were open to the owner of a patent whose rights had been infringed, and he had his election between the two: he might proceed in equity and recover the gains and profits which the infringer had made by the unlawful use of his invention, the infringer in such a suit being regarded as the trustee of the owner of the patent as respects such gains and profits; or

the owner of the patent might sue at law, in which case he would be entitled to recover, as damages, compensation for the pecuniary injury he suffered by the infringement, without regard to the question whether the defendant had gained or lost by his unlawful acts, — the measure of damages in such case being not what the defendants had gained, but what the plaintiff had lost.   Curtis on Pat. (4th ed.) 461 ; 5 Stat. 123.

Where the suit is at law, the measure of damages remains unchanged to the present time, the rule still being, that the verdict of the jury must be for the *actual* damages sustained by the plaintiff, subject to the right of the court to enter judgment thereon for any sum above the verdict, not exceeding three times that amount, together with costs.   16 Stat. 207.

Damages of a compensatory character may also be allowed to the complainant suing in equity, in certain cases, where the gains and profits made by the respondent are clearly not sufficient to compensate the complainant for the injury sustained by the unlawful violation of the exclusive right secured to him by the patent.   Gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the respondent; in which event the provision is, that the complainant " shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby."

Cases occurred under the prior patent act where manifest injustice was done to the complainant in equity suits, by withholding from him a just compensation for the injury he sustained by the unlawful invasion of his exclusive rights, even when the final decree gave him all that the law allowed.   Examples of the kind may be mentioned where the business of the infringer was so improvidently conducted that it did not yield any substantial profits, and cases where the products of the patented improvements were sold greatly below their just and market value, in order to compel the owner of the patent, his assignees and licensees, to abandon the manufacture of the patented product.

Courts could not, under that act, augment the allowance made by the final decree, as in the case of the verdict of a jury;

but the present patent act provides that the court shall have the same powers to increase the decree; in its discretion, that are given by the act to increase the damages found by verdicts in actions at law. Such difficulties could never arise in an action at law, nor can it now, as both the prior and the present patent act authorize the court to enter judgment on the verdict of the jury for any sum above the verdict, not exceeding three times that amount. No discretion is vested in the jury; but they are required to find the *actual damages*, under proper instructions from the court.

Still, it is obvious that there cannot be any one rule of damages prescribed which will apply in all cases, even where it is conceded that the finding must be limited to actual damages. Frequent cases arise where proof of an established royalty furnishes a pretty safe guide both for the instructions of the court and the finding of the jury. Reported cases of undoubted authority may be referred to which support that proposition; and yet it is believed to be good law, that the rule cannot be applied without qualification, where the patented improvement has been used only to a limited extent and for a short time, but that in such a case the jury should find less than the amount of the license fee; and it is admitted in several cases that the circumstances may be such that the finding should be larger than the royalty. *Seymour* v. *McCormick*, 16 How. 490; *Livingston* v. *Woodworth*, 15 id. 560; *Dean* v. *Mason*, 20 id. 203; Curtis on Pat. (4th ed.) 459.

Evidence of an established royalty will undoubtedly furnish the true measure of damages in an action at law, where the unlawful acts consist in making and selling the patented improvement, or in the extensive and protracted use of the same, without palliation or excuse; but where the use is a limited one and for a brief period, as in the case before the court, it is error to apply that rule arbitrarily and without any qualification. *Packet Co.* v. *Sickles*, 19 Wall. 617; *Burdell et al.* v. *Denig et al.*, 92 U. S. 716; *Suffolk Co.* v. *Hayden*, 3 Wall. 320.

Four of the pans in this case were used throughout without wings, and wings in most of the others were used only for a short time, and in none of the pans for more than six weeks.

Under these circumstances, it was error to charge the jury, that, if they found any damages, they must find the amount of the royalty for each pan so used, as that was instructing the jury in effect that they must find $100 for each pan, which is plainly more than the actual damages proved by the evidence.   Actual damage is the statute rule; and, whenever the royalty plainly exceeds the rule prescribed by the Patent Act, the finding should be reduced to the statute rule.

*Judgment reversed, and cause remanded with directions to issue a venire de novo.*