Verdict, not guilty.

---

KELLER *et al.* v. STOLZENBAUGH *et al.*

(*Circuit Court, W. D. Pennsylvania.* June 9, 1890.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—DREDGING MACHINES.
  A claim in letters patent for "the combination of a dredging apparatus for dredging and elevating the material, a screen for separating the material, and a device for elevating and discharging the water into the screen, substantially as specified," *held* to be be infringed by the use of a water-jet pipe placed directly over the screen, and lengthwise of the same, from which water raised from the river by means of a pulsometer was discharged directly on the top and exterior of the revolving screen.

2. SAME—DAMAGES.
  In assessing damages for a brief infringement of a patent, an established license fee is not to be adopted as the arbitrary standard, but should be used as affording proper guidance, in connection with the qualifying circumstances of the particular case, in the ascertainment of the plaintiff's actual damages.

At Law.

In pursuance of a written stipulation this case was tried by the court without the intervention of a jury. The following facts are therefore found by the court:

*First.* On the 17th day of August, 1875, the letters patent here in suit, being reissue No. 6,598, were issued upon the surrender, and in lieu of letters patent No. 126,968, dated May 21, 1872, to Nicholas J. Keller, one of the plaintiffs, for an improvement in sand and gravel separating machines, the first claim of said reissued letters patent being as follows:

"(1) The combination of a dredging apparatus for dredging and elevating the material, a screen for separating the material, and a device for elevating and discharging water into the screen, substantially as specified."

And the third claim being in the following words:

"(3) The combination of a cylindrical screen, suitable devices for elevating water, and the material to be separated and feeding the same to the screen, a receptacle or receptacles for the material which has passed the screen, and an elevator or elevators for carrying away the screened material."

The said reissued letters patent are made part of this finding the same as if herein recited at length.

*Second.* On March 31, 1883, by an instrument of writing duly executed, Nicholas J. Keller assigned to his co-plaintiff, Thomas R. Williams, the one-half of said reissued letters patent, and said assignment was recorded in the patent-office on April 2, 1883.

*Third.* In October, 1888, the defendants placed on their dredging-boat, called the "Progress," two sand and gravel separating machines, one on each side of the boat, and thenceforth until the expiration of the patent on May 20, 1889, used the same upon said boat in the course of their business within the western district of Pennsylvania, for elevating sand and gravel from the river-beds, and separating the material so raised. Each of said machines was provided with a water-jet pipe placed directly over the screen, and lengthwise of the same, and water raised from the river by means of a pulsometer was discharged from said pipe directly on the top and exterior of the revolving screen. Including this device as a constituent, each of said machines contained and had in use the combination described in and covered by the first claim of said reissued letters patent, and the combination described in and covered by the third claim of said reissued letters patent.

*Fourth.* The defendants' said two sand and gravel separating machines were of a construction similar to that shown by the drawings of letters patent No. 324,158, granted on August 11, 1885, to Philip M. Pfeil, and their avowed object in using the pulsometer and water-jet pipes for raising water and discharging the same upon the screens was to clear the sieve of small grains of gravel which sometimes get wedged into the meshes of the screen, but, in fact, by means thereof, the water was fed to and discharged through the sieve into the screen in such quantity and manner as to aid materially in washing and separating the sand and gravel, and in preventing the tendency of the screen to clog, and in assisting in the discharge of the refuse matter.

*Fifth.* The plaintiffs had an established license fee of $1,000 for the use of one of their aforesaid patented machines.

*D. F. Patterson* and *Wm. L. Pierce,* for plaintiffs.

*George H. Christy,* for defendants.

ACHESON, J. Whatever may have been the real purpose of the defendants in using the pulsometer and the water-jet pipe, the effect of the discharge of the water upon the top of the revolving screen was as stated in the fourth finding of fact. Indeed, with the amount of water used, it is

not easy to see how the result could be otherwise. The conclusion above stated upon this question of fact is, I think, fully warranted by the evidence. Now, to hold that to constitute infringement the water must enter the screen at the end where the material to be washed enters, would be a very narrow and unreasonable construction of the patent. The claims are not so limited in their terms. Manifestly, if water in sufficient quantity is elevated and then fed to the screen through the upper side thereof as it revolves, the beneficial result of the invention is attained substantially in the manner contemplated by the inventor. It is here worthy of note that the specification states that a steam siphon pump may be used for elevating the water, either as an adjunct to the chain and buckets, or in place thereof, as may be found desirable. And the specification describes the discharge of the water as "at or about the same point as the buckets of the elevator B discharge their contents,"—the material to be treated. I am of the opinion, then, that the defendants are liable as infringers of the plaintiffs' patent. Upon any fair construction of the contract, the licenses in evidence, I think, only conferred each the privilege of using one patented machine; and as the defendants had on their dredging-boat two machines, they would be chargeable with two license fees, if the established fee were adopted as an arbitrary standard of damages. But I am of the opinion that while the license fee affords proper guidance in the ascertainment of the damages, yet regard should be had, also, to the qualifying circumstances of the case, to the end that the finding may be for the actual damages sustained by the plaintiffs, agreeably to the principles announced by the supreme court in *Birdsall* v. *Coolidge*, 93 U. S. 64. Now, the infringement here, it would seem, was not characterized by any bad faith, and it only lasted about six months, and this period included the winter season. It seems to me, then, upon much reflection, that the sum of $1,000 in full compensation of the damages sustained by the plaintiffs, would be a just and reasonable allowance. And now, June 9, 1890, the court finds in favor of the plaintiffs, and that the defendants infringed the first and third claims of the reissued letters patent sued on, and that as and for their damages the plaintiffs recover from the defendants the sum of $1,000. Let judgment be entered upon the finding of the court for the plaintiffs in the sum of $1,000, and costs.