**Charles Kremer BAIN, Plaintiff,**

v.

**The M. A. HANNA COMPANY,
Defendant,**

**and**

**Blaw-Knox Company, Intervenor.**

**Civ. A. No. 752.**

United States District Court
W. D. Michigan, N. D.

March 1, 1962.

Grand, Peper, Martin & Roudebush, Kingsland, Rogers & Ezell, St. Louis, Mo., Eldredge & McDonald, Marquette, Mich., for plaintiff.

Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., Paul Rahm, Iron Mountain, Mich., for defendant.

KENT, Chief Judge.

This is an action for damages for alleged infringement of Bain Patent No. 2,667,750. The patent covers a "method and apparatus for sinking mine shafts", and was issued February 2, 1954. After the complaint was filed the plaintiff, a resident and citizen of St. Louis, Missouri, consented to the intervention of the Blaw-Knox Company, a Delaware corporation, and the intervening defendant became the actual defendant in the case in place of M. A. Hanna Company, an Ohio corporation. Prior to trial it was agreed by counsel for all parties that any error in the description of the original defendant or the nature of its entity, whether a corporation or partnership, or the name of the actual owner of the premises involved, could be considered as waived by the Court, and that the Court should limit itself to the determination of the validity of the patent, whether the patent was infringed by the intervenor, (hereinafter referred to as defendant) Blaw-Knox Company, and the extent of damage sustained by the plaintiff, if any.

The alleged infringement took place during the construction of a mine shaft described as the Homer-Wauseca shaft at Iron River, Michigan, within the Northern Division of the Western District of Michigan. The alleged acts of infringement are claimed to have occurred during the years 1956 to 1959. This Court is asked to consider only Claims 1, 2, and 3 of the patent in suit, all of which relate to a method for the sinking of a concrete lined circular mine shaft.

In the application it is stated:

"It has become customary to provide a mine shaft with a lining along the walls thereof of concrete so as to seal off water seepage and prevent crumbling and the like. The usual practice has been to excavate the shaft to its full depth and then to

apply the concrete lining to the shaft walls, starting at the bottom and working upward to the top of the shaft.

"An object of this invention is to provide a method whereby a concrete lining may be applied to the shaft wall as the excavation of the shaft proceeds, working from the top downward."

The claims of the patent upon which the plaintiff relies, read as follows:

"1. The method of sinking mine shafts, comprising, excavating a shaft section to a predetermined depth, rigidly mounting a plurality of guide beams in vertical position along the sides of the excavated section, securing concrete-supporting bottom forms to the lower portions of said beams above the bottom of said beams to extend along the wall of said excavated section but spaced therefrom, said bottom forms closing the space between said upright forms and said wall, and pouring concrete between said upright forms and said wall to mold a shaft-lining section having its lower end spaced above the bottom of said excavated shaft section.

"2. The method of sinking mine shafts, comprising, excavating a shaft section to a predetermined depth, rigidly mounting a plurality of guide beams in vertical position along the sides of the excavated section, securing concrete-supporting bottom forms to the lower portions of said beams above the bottom of said excavated section, securing upright forms to said beams to extend along the wall of said excavated section but spaced therefrom said bottom forms closing the space between said upright forms and said wall, pouring concrete between said upright forms and said wall, excavating a succeeding shaft section be-

low said first section, and in like manner molding a succeeding shaft-lining section below the preceding one.

"3. The method of sinking mine shafts, comprising excavating the shaft for a predetermined depth, rigidly mounting a plurality of guide beams in vertical position along the sides of the shaft, securing a lower concrete-supporting ring to the lower ends of said guide beams, securing removable forms to said guide beams, said forms extending along the shaft wall but spaced therefrom, pouring concrete between said forms and the shaft wall to mold a shaft-lining section, after the concrete has set removing said forms and said lower ring, and repeating the foregoing sequence of operations to mold a succeeding shaft-lining section below the preceding one."

Defendant takes the position that the patent in suit is invalid as lacking invention, not because the patent reads directly upon any previously issued patent, but because all of the elements of the plaintiff's patent have been previously described in previously issued patents and in publications available at the time of the plaintiff's application.

Defendant relies upon certain prior trade publications dating back to 1894, and also upon prior United States Patents.[1] Defendant further takes the position that the method used by the defendant in the sinking of the Homer-Wauseca shaft does not directly or by the manner of use infringe upon plaintiff's patent.

The evidence demonstrated that the patent in suit describes a method whereby mine shafts can have concrete linings applied while the shaft is being excavated, working from the top downward, in the manner described in Claims 1, 2, and 3 of plaintiff's patent in suit. The evidence further showed that the defendant did not utilize "guide beams rigidly mounted

1. A. Baca, No. 637,693, November 21, 1899; E. Lardy, No. 1,003,140, September 12, 1911; E. Morlae, No. 1,089,573, March 10, 1914; H. O. Davidson, No. 1,319,048, October 21, 1919; L. J. Sarosdy, No. 2,242,730, May 20, 1941.

in a vertical position \* \* \* securing concrete supporting ring to the lower ends of said guide beams". The evidence further demonstrated that the defendant did not secure removable forms to guide beams. The use of the method described in the plaintiff's patent as demonstrated by the exhibits received in evidence and as described in the testimony requires that guide beams be secured by bolts, in holes previously provided for, to the previous pour (or cast) in a rigid position, to the desired depth previously excavated. To the bottom of these guide beams, according to the plaintiff's proofs, is secured a template or ring which according to plaintiff's proofs is designed to carry the weight of the wet concrete when rigidly fixed in position by hydraulic jacks placed horizontally against the rock wall of the previously excavated area. After the beams are affixed in plumb to the previous pour and the template or ring is rigidly in place removable forms are then attached to the guide beams in quadrants providing for the pouring of the concrete liner in the area between the previous pour and the template.

The evidence demonstrated that the defendant's method required the use of "anchor" or "suspension" chains attached to the previous pour with bolts inserted in holes previously provided for, that from the anchor chains was suspended a collapsible circular form of the desired diameter when expanded after the form had been suspended from the bolts in the previous pour (cast). There was a narrow beveled ring at the bottom of defendant's form which could not, was not intended to, and did not carry the weight of the concrete. The area of contact and support at the bottom of the newly poured concrete was primarily with the muck and sand placed at the bottom of the form to fill in the area beneath the form. The form was wedged into place in position plumb with the previous pour by the use of wooden blocks wedged against the muck and sand beneath the form. The horizontal jacks described in the Bain patent in suit were not utilized in the Homer-Wauseca shaft.

It was conceded by plaintiff's counsel that the method used in the sinking and lining the Homer-Wauseca shaft by the defendant was not an exact copy of the method for sinking and lining shafts described in Claims 1, 2, and 3 of the Bain patent. It is plaintiff's claim that the method actually used was nothing more or less than an adaptation of the Bain patent method.

It is the plaintiff's theory and claim that the use of anchor chains, the use of a collapsible form, the use of a beveled ring at the bottom wedged against the muck in the previously excavated area was equivalent to the method described in the patent in suit, i. e., the use of guide beams rigidly mounted, to which is attached a template or bottom ring carrying the weight of the poured concrete and the use of quadrant forms as described in Claims 1, 2, and 3 of the plaintiff's patent.

It was with difficulty that the Court determined from plaintiff's proofs and arguments the elements of novelty upon which the plaintiff relied. It was the Court's conclusion and is the Court's finding based upon the evidence that plaintiff claims that the rigidly mounted guide beams, utilized for the purpose of assuring that the new pour would be plumb with the previous pour, and the circular template or bottom ring used in part for the same purpose in conjunction with the guide beams when braced against the wall of the excavation by horizontal jacks, and the template used in part to support the wet concrete were the novel features upon which plaintiff relied, having in mind that the rigid guide beams could be used in conjunction with forms attached in quadrants to obtain the desired diameter. It was conceded that quadrant forms as used in the method described by Bain were merely an utilization of a method of forming long known to the art.

 Under the patent law an inventor is entitled to the benefit of his

patent and is entitled to have those benefits protected by the Courts if his patent is valid and infringed. 35 U.S.C.A. 284; Horvath v. McCord Radiator & Mfg. Co., C.A. 6, 100 F.2d 326; Birdsall et al. v. Coolidge, 93 U.S. 64, 23 L.Ed. 802; Bros Incorporated v. W. E. Grace Manufacturing Company, C.A. 5, 261 F.2d 428, 433. It is defendant's theory that the plaintiff's patent has no novel features, that each of the features of the device patented was anticipated by prior art, by the general knowledge in the trade, or by prior publication. Basically, it is defendant's contention that this patent is invalid under the provisions of Title 35 U.S.C.A. § 102—

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

"(c) he has abandoned the invention, or

"(d) the invention was first patented or caused to be patented by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application filed more than twelve months before the filing of the application in the United States, or

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

"(f) he did not himself invent the subject matter sought to be patented, or

"(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

While there is a presumption as to the validity of patents under the provisions of Title 35 U.S.C.A. § 282, this presumption is weakened if there is applicable prior art or descriptive prior publication not considered by the Patent Office. France Mfg. Co. v. Jefferson Electric Co., 106 F.2d 605, C.A. 6; Wolverine Fabricating & Mfg. Co. v. Detroit Gasket & Mfg. Co., 148 F.2d 399, C.A. 6; Modern Products Supply Co. v. Drachenberg, 152 F.2d 203, C.A. 6; Cold Metal Process Co. v. Republic Steel Corp., 233 F.2d 828, C.A. 6; Murray Company of Texas Inc. v. Continental Gin Co., 264 F.2d 65, C.A. 5. The whole subject of the presumption of validity has been reviewed on numerous occasions and by numerous courts, Cold Metal Process v. Republic Steel Corp., 233 F.2d 828, C.A. 6, cert. den. 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86, rehearing denied 352 U.S. 955. Under the statute, 35 U.S.C.A. § 282, the burden is upon the defendant to establish the invalidity of the patent in suit, Mumm v. Jacob E. Decker & Sons, 1936, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983; Firestone v. Aluminum Company of America, C.A. 6, 285 F.2d 928; Kim Bros. v. Hagler, C.A. 9, 276 F.2d 259; Midland Steel Products Co. v. Clark Equipment Co., C.A. 6, 174 F.2d 541.

■ This Court is satisfied from the proofs and finds as a fact that the elements upon which plaintiff relies are not novel and that the method was anticipated. The evidence demonstrated beyond question that guide beams to maintain forms in plumb with previous pours or other objects have long been used by

persons skilled in the art of pouring concrete. It was pointed out in the proofs few vertical pours are made without rigid beams of wood or metal to maintain the forms in plumb with previous pours or with the foundations of the structure.

An examination of Baca Patent 637,-693; Lardy Patent 1,003,140; Morlae Patent 1,089,573; Redmayne, "Modern Practice in Mining", Vol. II, pages 116–121, Longmans Green and Co., 1909; Donaldson, "Practical Shaft Sinking", pages 129–139, McGraw-Hill, 1910; "Sinking a Mine Shaft in South Africa", Compressed Air Magazine, January, 1947, pages 8–12; Findlay "Notes on Freddies' Shafts in the Orange Free State", Journal of the Chemical, Metallurgical and Mining Society of South Africa, February, 1949, pages 350–356; has established to the satisfaction of this Court, in the light of the evidence, that the elements of Claims 1, 2, and 3 of the Bain Patent 2,667,750, upon which the plaintiff relies as being novel were anticipated by these prior patents and publications. And an examination of the file wrapper discloses that none of the art and none of the publications cited by the defendant in opposition to the validity of plaintiff's patent were considered by the patent office prior to the issuance of the patent in suit. Therefore the presumption of validity[2] loses its strength in the light of these items of prior art and publication.

The Court is satisfied after an examination of the prior patents and the prior publications that the language used by Judge Starr, of this Court, in De Burgh v. Kindel Furniture Co., 125 F. Supp. 468, 474, aff'd 229 F.2d 740, cert. den. 352 U.S. 823, 77 S.Ct. 30, 1 L.Ed.2d 47, is descriptive of the subject matter of this patent.

"The plaintiff's patent in suit is a combination improvement patent comprising an accumulation or aggregation of old parts or elements with some slight changes, modifications or substitutions. To constitute patentable invention an aggregation of old elements or parts must cooperate to produce a new, unobvious, and unexpected result. Application of Bowen, 197 F.2d 553, 39 C.C.P.A., Patents, 1027. If invention is absent, mere utility and novelty are not alone sufficient to sustain the validity of a combination patent. * * *"

It is the finding and conclusion of this Court that the Bain patent in suit is lacking in novelty and invention and is invalid.

Assuming the validity of the patent there remains a very serious question as to whether it has been infringed. From the proofs the Court is satisfied, and the plaintiff, for all practical purposes, conceded that the patent was not directly infringed and the plaintiff must, as he did, therefore depend upon the doctrine of equivalents. The law relating to equivalents in determining whether an accused device infringes a valid patent is recognized and reviewed in Graver Manufacturing Company v. Linde Company, (1950), 339 U.S. 605, pages 607, 610, 70 S.Ct. 854, 855, 94 L.Ed. 1097, where the United States Supreme Court spoke through Mr. Justice Jackson as follows:

"In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it.

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and

2. 35 U.S.C.A. § 282.

substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system.

"The doctrine of equivalents evolved in response to this experience. The essence of the doctrine is that one may not practice a fraud on a patent. Originating almost a century ago in the case of Winans v. Denmead, 15 How. 330 [14 L.Ed. 717], it has been consistently applied by this Court and the lower federal courts, and continues today ready and available for utilization when the proper circumstances for its application arise. 'To temper unsparing logic and prevent an infringer from stealing the benefit of the invention' a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42 [50 S.Ct. 9, 13, 74 L.Ed. 147]. The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' Machine Co. v. Murphy, 97 U.S. 120, 125 [24 L.Ed. 935]. The doctrine operates not only in favor of the patentee of a pioneer or primary invention, but also for the patentee of a secondary invention consisting of a combination of old ingredients which produce new and useful results, Imhaeuser v. Buerk, 101 U.S. 647, 655 [25 L.Ed. 945], although the area of equivalence may vary under the circumstances. See Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 414–415 [28 S.Ct. 748, 749, 52 L.Ed. 1122], and cases cited; Seymour v. Osborne, 11 Wall. 516, 556 [20 L.Ed. 33]; Gould v. Rees, 15 Wall. 187, 192 [21 L.Ed. 39]. The wholesome realism of this doctrine is not always applied in favor of a patentee but is sometimes used against him. Thus, where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568 [18 S.Ct. 707, 722, 42 L.Ed. 1136]. In its early development, the doctrine was usually applied in cases involving devices where there was equivalence in mechanical components. Subsequently, however, the same principles were also applied to compositions, where there was equivalence between chemical ingredients. Today the doctrine is applied to mechanical or chemical equivalents in compositions or devices. See discussions and cases collected in 3 Walker on Patents (Deller's ed. 1937) §§ 489–492; Ellis, Patent Claims (1949) §§ 59–60.

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered

in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.

"A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience."

An excellent examination of the Doctrine of Equivalents is also found in the opinion of Judge Martin of the Court of Appeals for the Sixth Circuit, speaking for the Court in United States Rubber Co. v. General Tire and Rubber Co., 128 F.2d 104, pp. 108–109:

"Appellant correctly asserts that even where the invention must be restricted in view of the prior art to the form shown and described by the patentee without extension to embrace a new form constituting a substantial departure, there is infringement where the departure is merely colorable. E. H. Bardes Range & Foundry Company v. American Engineering Company, 6 Cir., 109 F. 2d 696, 698; Duff v. Sterling Pump Company, 107 U.S. 636, 639, 2 S.Ct. 487, 27 L.Ed. 517; Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 41, 50 S.Ct. 9, 74 L.Ed. 147. Furthermore, except where form is of the essence of the invention, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result.' Union Paper Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935. It is also well settled that, although some change in form and position is apparent, a close copy which uses the substance of an invention, employs the same device, performing the same offices with no change in principle, constitutes infringement of the invention. Ives v. Hamilton, 92 U.S. 426, 430, 23 L.Ed. 494; E. H. Bardes Range & Foundry Company v. American Engineering Company, supra. Infringement is not avoided by change in degree, so long as the distinguishing function is retained, or by adding elements to the complete structure of the patent claim. Murray v. Detroit Wire Spring Company, 6 Cir., 206 F. 465, 468. Inasmuch as specifications and claims are addressed to persons skilled in the art, the claims of a patent should be construed liberally to uphold and not to destroy the rights of the inventor. National Battery Company v. Richardson Company, 6 Cir., 63 F.2d 289, 293.

"In Walker on Patents (Deller's Edition), Vol. 3, Sec. 482, pages 1728, 1729, the author says:

" 'A combination of old elements which accomplishes a new and beneficial result, or attains an old result in a more facile, economical or efficient way, may be protected by a patent as securely as a new machine

or composition of matter. * * * And the doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention.'"

"[11] In determining the issue of infringement, a court should consider whether the elements of the defendant's device are merely mechanical equivalents of the elements enumerated in the plaintiff's claim. If elements of the claim are omitted from an accused device, and the mode and manner of operation of the latter are substantially different from the patentee's apparatus, the accused device will be held not to infringe. Directoplate Corporation v. Donaldson Lithographing Company, 6 Cir., 51 F.2d 199, 201, 202.

"[12, 13] Infringement of a combination patent is not proved unless it appears that the alleged infringer used the entire combination. Wood v. Peerless Motor Car Corporation, 6 Cir., 75 F.2d 554, 556; Cimiotti Unhairing Company v. American Fur Refining Company, 198 U.S. 399, 410, 25 S.Ct. 697, 49 L.Ed. 1100; Dunbar v. Myers, 94 U.S. 187, 202, 24 L.Ed. 34; Cf. Philadelphia Rubber Works Company v. Portage Rubber Company, 6 Cir., 241 F. 108, 110. A claim is not infringed, if one of its elements is omitted without the substitution of an equivalent. Russell Grader Manufacturing Company v. F. B. Zeig Manufacturing Company, 6 Cir., 259 F. 575, 577."

In some instances this Doctrine should be modified depending upon the breadth or narrowness of the claims in the patent. Continental Paper Bag v. Eastern Paper Bag Co., (1908), 210 U.S. 405, at page 414, 28 S.Ct. 748, 52 L.Ed. 1122.

The state of the art in regard to the use of forms for shafts and tunnels as demonstrated by the prior art and publications was such that in this Court's opinion plaintiff's claims should have a narrow interpretation. This, however, is not the basis on which the Court reaches its conclusion as to the equivalence of defendant's method to that described in plaintiff's patent in suit. The description of the two methods found earlier in the opinion should be sufficient to establish that the method used by the defendant was not the equivalent of the method described in the patent in suit. None of the devices claimed to have been equivalents were used for the purposes described in the claims of the patent. The anchor chains or suspension chains were at no time used as a mounting for the quadrant form as were the rigidly mounted guide beams described in Claims 1, 2, and 3 of plaintiff's patent. The bottom ring used by the defendant was not utilized for the bearing of the weight of the poured concrete as was the template or bottom ring described and claimed in Claims 1, 2, and 3 of the plaintiff's patent. The defendant's form was not plumbed by the use of hydraulic jacks in a horizontal position against the rigidly mounted guide beams and the sides of the excavation as described in the plaintiff's patent. Rather the defendant's collapsible form was placed in a plumb position by one of the oldest devices known to man, a wedge, and the form utilized in the sinking of the Homer-Wauseca shaft was not attached in quadrants to the rigidly mounted guide beams described in the plaintiff's patent but was a unit device collapsible in nature which could be expanded to the previously determined diameter and then placed in plumb by wedging against previously excavated materials at the bottom of the form.

Based upon all the testimony and the documentary evidence the Court is satisfied that:

1. All of the claimed novel features of Bain Patent 2,667,750 had been described in the cited prior art and publications;

2. Bain Patent 2,667,750 is lacking in novelty and invention;

3. The method used by the defendant in the sinking of the Homer-Wauseca shaft was not a copy of the method described in Bain Patent 2,667,750;

4. The method used by the defendant in the sinking of the Homer-Wauseca shaft was not the equivalent of the method described in Bain Patent 2,667,750.

For the reasons herein stated the defendant is entitled to judgment and an order may be entered accordingly. The Court's opinion shall stand as the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.