**NIKE, INC., Plaintiff–Appellee,**

v.

**WAL–MART STORES, INC. and Hawe Yue, Inc., Defendants–Appellants.**

No. 97–1173.

United States Court of Appeals, Federal Circuit.

March 12, 1998.

Mark T. Banner, Banner & Witcoff, Ltd., Chicago, IL, argued for plaintiff–appellee.

With him on brief were Christopher J. Renk and Robert S. Katz, Washington, DC, of counsel Patricia E. Hong and James A. Niegowski, Washington, DC.

William D. Coston, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, argued for defendants–appellants. With him on brief E. Brendan Magrab and James R. Burdett. Of counsel was William L. Jaeger, Townsend and Townsend and Crew, LLP, San Francisco, CA.

Before MAYER, Chief Judge,* NEWMAN and PLAGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Wal–Mart Stores, Inc., and Hawe Yue, Inc. appeal the judgment of the United States District Court for the Eastern District of Virginia,[1] concerning United States Design Patent No. 348,765 (the D'765 patent), owned by Nike, Inc. The court held the patent valid and infringed, and awarded the infringers' profits to the patentee in accordance with 35 U.S.C. § 289. The appellants do not appeal the rulings of validity and infringement, but raise issues of patent marking, notice, the measure of compensation, and accounting.

We reverse the district court's holding that the marking statute does not apply when remedy for infringement is obtained under 35 U.S.C. § 289, and remand for findings concerning Nike's compliance with the marking statute. The court's accounting methodology is affirmed.

## BACKGROUND

The D'765 patent is for Nike's "Air Mada Mid" model athletic shoe design, illustrated as:

FIG. 1

The D'765 patent was applied for on October 13, 1993, and issued on July 19, 1994 upon Nike's expedited prosecution. Nike introduced these shoes into the marketplace in April 1994. Significant numbers of shoes had already been manufactured and sold, or were already in the distribution chain, at the time of patent issuance; these shoes were unmarked with the patent number. Nike implemented marking procedures after patent issuance.

Hawe Yue imported copies of the Air Mada Mid design shoes starting in April 1995, and Wal–Mart's first retail sales were in May 1995. On January 18, 1996 Nike filed suit in the Eastern District of Virginia. The appellants' position is that the presence in

---

* Chief Judge Haldane Robert Mayer assumed the position of Chief Judge on December 25, 1997.

1. *Nike, Inc. v. Wal–Mart Stores, Inc.,* 41 USPQ2d 1146 (E.D.Va.1996).

the marketplace and the sale of unmarked shoes before and after Nike's asserted marking precludes Nike's recovery for any infringement that occurred before suit was filed, citing the marking statute, 35 U.S.C. § 287(a):

> **§ 287(a).** Patentees ... may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by affixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of a failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

The district court held that the marking statute applies when the requested remedy is "damages," e.g., the remedy provided for in the general damages provision, 35 U.S.C. § 284:

> **§ 284.** Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty....

However, the court held that the marking statute does not apply to limit recovery of the infringer's profit, an alternate remedy for design patent infringement, codified at 35 U.S.C. § 289:

> **§ 289.** Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under

the provisions of this title, but he shall not twice recover the profit made from the infringement.

Although the parties disputed factual issues of marking, as well as the legal effect of the existence of unmarked shoes, the district court found it unnecessary to resolve these issues. Holding that marking is not required by statute when recovery of the infringer's profit is sought under § 289, the district court awarded Nike the appellants' profits for all of the infringing sales. Wal–Mart and Hawe Yue appeal this ruling, contending that Nike's sale of unmarked shoes precludes any recovery for infringement, however measured, before suit was filed. Nike responds that the district court correctly held that § 287(a) does not apply. Alternatively, Nike states that its marking procedures complied with § 287(a).

## I

## MARKING

■ The district court considered the provision in § 287(a) that "[i]n the event of a failure to mark, no damages shall be recovered by the patentee in any action for infringement." The court held that the provision is unambiguous, and cited the "longstanding distinction in patent law between damages and profits," quoting *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 824, 24 USPQ2d 1121, 1128 (Fed.Cir.1992) (holding that the treble damages provision of § 284 does not apply to recovery of profits under § 289). The district court held that the distinction between damages and profits requires that the marking statute with its limitation on "damages" does not apply to a recovery of the infringer's "profit" under § 289.

The appellants challenge this statutory interpretation. They contend that "damages" is used in § 287(a) in its general and ordinary meaning of money recovered from a wrongdoer, however the recovery is measured. Nike responds that the historical distinction between profits and damages supports and indeed requires the district court's ruling. Nike proposes that since these statu-

tory provisions are unambiguous no further inquiry is warranted.

■ Although a statute clear on its face does not warrant resort to history, inquiry is proper to determine whether ambiguity has invaded an apparently clear text. *Cf. Mansell v. Mansell,* 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989) (requiring "clear evidence that reading the language literally would thwart the obvious purposes of the Act"); *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978). Our inquiry into the parallel but separate evolutions of the marking statute and the remedies statutes has led us to an interpretation that departs from the plain words of the statute. We conclude that the term "damages" as it appears in the marking statute is not limited to the recovery at law from which it arose, but includes recovery measured by the infringer's profits, and continues to be so used although such recovery is now limited to design patent infringement. The statutory history establishes that the marking requirement has always applied, and continues to apply, to both recovery of the infringer's profit under § 289, and recovery of damages, however measured, under § 284.

## A

### Damages and Profits

The first patent statutes reflect the separation of law and equity, carried over from the English common law of patents. The Patent Acts of 1790, 1793, and 1800 provided the remedy of damages in an action at law "on the case," the Act of 1790 providing that the infringer should pay "such damages as shall be assessed by a jury," the Act of 1793 awarding threefold the patentee's sale or licensing price, and the Act of 1800 awarding "a sum equal to three times the actual damage sustained by such patentee." *See* Act of 1790, 1 Stat. 111; Act of 1793, 1 Stat. 318; Act of 1800, 2 Stat. 37.

The equitable remedy of injunction in patent cases was authorized in 1819. By the Patent Act of 1836 a patentee could recover compensatory damages in an action at law (the "actual damages sustained by the plaintiff, not exceeding three times the amount thereof"), or when an injunction was sought

the patentee could recover the infringer's profit. *See* Act of 1836, 5 Stat. 117; *Stevens v. Gladding,* 58 U.S. (17 How.) 447, 455, 15 L.Ed. 155 (1854) ("The right to an account for profits is incident to the right to an injunction, in copy and patent right cases.") Thus the patentee could elect to proceed in equity and recover the infringer's profits, or to proceed in law and recover "as damages, compensation for the pecuniary injury he suffered by the infringement." *Birdsall v. Coolidge,* 93 U.S. (3 Otto) 64, 68–69, 23 L.Ed. 802 (1876). However, the patentee was required to choose between these paths of recovery. In *Birdsall* the Supreme Court described the difficulties in obtaining just monetary recovery in equity suits, writing that "manifest injustice was done to the complainant in equity suits," 93 U.S. (3 Otto) at 69, reflecting accounting and related difficulties. As remedy, the Act of 1870 authorized the court in equity to award both the infringer's profits and compensatory damages:

§ 55 ... [T]he court shall have power, upon bill in equity filed by any party aggrieved, ... to prevent the violation of any right secured by patent, ... and upon a decree being rendered in any such case for an infringement, the claimant shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby....

Act of 1870, 16 Stat. 201.

Although by its terms the Act of 1870 allowed a double recovery, the Court in *Birdsall* held that damages should be awarded only to the extent that "the injury sustained by the infringement is plainly greater than the aggregate of what was made by the [infringer]." *Birdsall,* 93 U.S. (3 Otto) at 69. In *Coupe v. Royer,* 155 U.S. 565, 15 S.Ct. 199, 39 L.Ed. 263 (1895) the Court again explained that the patentee should recover at least his losses:

There is a difference between the measure of recovery in equity and that applicable in an action at law. In equity, the complainant is entitled to recover such gains and profits as have been made by the infringer from the unlawful use of the invention, and, since the act of July 8, 1870, in cases

where the injury sustained by the infringement is plainly greater than the aggregate of what was made by the defendant, the complainant is entitled to recover the damages he has sustained, in addition to the profits received. At law the plaintiff is entitled to recover, as damages, compensation for the pecuniary loss he has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts—the measure of recovery in such cases being not what the defendant has gained, but what the plaintiff has lost.

155 U.S. at 582, 15 S.Ct. at 206 (1895). As explained in 3 W. Robinson, *The Law of Patents* § 1091 at 406 (1890), a plaintiff in equity could recover the infringer's profit and "damages also where [the plaintiff's] loss exceeded the defendant's profit." Thus the Act of 1870 provided for the recovery of damages in equity, but it did not allow for recovery of the infringer's profit as such in an action at law.

Because both the patentee's losses and the infringer's profits could be obtained in equity, whereas only the patentee's losses were recoverable at law, after 1870 a patentee had incentive to invoke equity jurisdiction even when injunctive relief was not important. However, even when the patentee prevailed in the equity court, computation of the amount of the patentee's recovery, whether measured as the infringer's profits or the patentee's losses, often presented a difficult problem of proof, for the Court had meanwhile held that the patentee could recover only the proportionate amounts that were proven to be attributable to the patented feature. *E.g., Garretson v. Clark,* 111 U.S. 120, 121, 4 S.Ct. 291, 28 L.Ed. 371 (1884) (the patentee "must, in every case, give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features").

Apportionment presented particularly difficult problems of proof for design patentees, for the patentee was required to show what portion of the infringer's profit, or of his own lost profit, was due to the design and what portion was due to the article itself. A series of cases involving carpet designs brought matters to a head, leading to the separate remedy for design patent infringement. The cases involved the Dobson brothers, who were found to have infringed patented designs for carpets. The Supreme Court held that the Dobsons were liable for no more than "nominal damages" of six cents because the patentees could not show what portion of their losses or the infringers' profits was due to the patented design and what portion was due to the unpatented carpet. *See Dobson v. Dornan,* 118 U.S. 10, 6 S.Ct. 946, 30 L.Ed. 63 (1886); *Dobson v. Hartford Carpet Co.,* 114 U.S. 439, 5 S.Ct. 945, 29 L.Ed. 177 (1885); *Dobson v. Bigelow Carpet Co.,* 114 U.S. 439, 5 S.Ct. 945, 29 L.Ed. 177 (1885).

Legislative remedy, specific to design patents, soon followed. Referring to the *Dobson* decisions, Congress reported that:

It now appears that the design patent laws provide no effectual money recovery for infringement. This is the result of the statute, as applied to the peculiar character of property involved, in a test case decided April last by the Supreme Court of the United States. Since that decision the receipts of the Patent Office in the design department have fallen off upwards of 50 per cent, and the average weekly issue of design patents has also fallen off just one half.

H.R.Rep. No. 1966 at 1 (1886), *reprinted in* 18 Cong. Rec. 834 (1887). The Report explained that "[i]t is expedient that the infringer's entire profit on the article should be recoverable," for "it is not apportionable," and "it is the design that sells the article." *Id.* at 2–3. The Report drew analogy to trademark law, and "the good will the design has in the market." *Id.* at 3. The Act of 1887, specific to design patents, removed the apportionment requirement when recovery of the infringer's profit was sought:

§ 1. Hereafter, during the term of letters patent for a design, it shall be unlawful for any person other than the owner of said letters patent, without the license of such owner, to apply the design secured by such letters patent, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or to sell or expose for sale any article of manufacture to which such design or colorable imitation shall,

without the license of the owner, have been applied, knowing that the same has been so applied. Any person violating the provisions, or either of them, of this section, shall be liable in the amount of two hundred and fifty dollars, he shall be further liable for the excess of such profit over and above [that sum, the full amount recoverable] either by action at law or upon a bill in equity for an injunction to restrain such infringement.

§ 2. That nothing in this Act contained shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any owner of letters patent for a design, aggrieved by the infringement of the same might have had if this act had not been passed; but such owner shall not twice recover the profit made from the infringement.

Act of 1887, 24 Stat. 387. The Act of 1887 thus authorized recovery by the patentee of the infringer's profit when the infringer appropriated the patented design "knowing that the same has been so applied." *Id.*

In 1897 the courts of law were granted the power to grant injunctions in patent cases, and to award both the infringer's profits and the patentee's damages; and to increase damages in accordance with the principles of trespass upon the case. Act of 1897, 29 Stat. 692. This statute makes no reference to the special rule for design patents enacted ten years earlier, and indeed there appears to be no conflict between them. The ensuing statutes also generally distinguished between recovery of the infringer's profits and the patentee's damages, without referring to the special remedy for design patent infringement. *E.g.,* Act of 1922, 42 Stat. 392; Act of 1946, 60 Stat. 778.

For the 1946 Act, which provided that the patentee should recover at least a reasonable royalty, the legislative history states that this "would not preclude the recovery of profits as an element of general damages." H.R.Rep. No. 1587, 79th Cong., 2d Sess. (1946); S.Rep. No. 1503, 79th Cong., 2d Sess. (1946). Calling the infringer's profits "an element of general damages" was not unusual, for it reflected common usage as well as the history wherein both the patentee's losses and the infringer's gain were measures of

recovery for infringement for utility as well as design patents.

The difference for design patents, as enacted in 1887, was the removal of the need to apportion the infringer's profits between the patented design and the article bearing the design. Although Nike argues that the 1946 Act should be read to have eliminated the marking requirement for design patents, the 1946 Act does not mention design patents and does not mention marking. We discern no basis for the theory that the marking requirement for design patents was cancelled in 1946.

With the 1952 codification of the patent law into Title 35, the general damages provision appears at § 284 and the additional provision for design patents appears at § 289. Section 284 as written did not state the 1946 Act's concept of recovering profits as an element of general damages, a purported ambiguity that was clarified in *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507, 84 S.Ct. 1526, 1543, 12 L.Ed.2d 457, 141 USPQ 681, 694 (1964). The Court interpreted § 284 as meaning that only the patentee's losses can be recovered, "without regard to the question whether the defendant has gained or lost by his unlawful acts," thus removing the equitable remedy of the infringer's profits from recovery under § 284. Although this case clarified the measure of recovery for infringement, it did not deal with patent marking requirements.

The 1887 provisions affording recovery of infringers' profits for design patent infringement were separately codified at § 289. Relevant to the marking issue, the phrase "knowing that the same has been so applied" of the 1887 Act was omitted from § 289. P.J. Federico, in his Commentary on the New Patent Act (1954), *reprinted in* 75 J. Pat. Trademark Off. Soc'y 161 (Mar.1993), acknowledged the omission but offered no explanation:

Section 289, providing an additional remedy for infringement of design patents, is a consolidation of two sections of the old statute with some revision in language. While the Revision Notes merely state that language has been changed, the phrase "knowing that the same has been so ap-

plied" which appeared in the old statute has been omitted. *Id.* at 203.

Thus the statutory record shows the origins in law and equity of remedy for patent infringement, initially and until 1887 without distinction between utility and design patents. Recovery of the infringer's profit was available for both utility and design patent infringement. The additional remedy created in 1887 for design patents was enacted to overcome the allocation problem for designs, and did not deplete the remedies available for either utility or design patent infringement. Further, the general damages statutes, which authorized recovery of the infringer's profits as well as the patentee's losses, continued in effect for both utility and design patents. Indeed, whether it was the 1946 or 1952 Act or the decision in *Aro Manufacturing* that eliminated recovery of infringer's profits in utility patent infringement, this remedy for design patents was unaffected.

This statutory context must be compared with the statutes concerning patent marking, for the marking statutes underwent an independent evolution leading to the anomaly we today observe, where the word "damages" has different meanings in different provisions of Title 35.

## B

### The Marking Statutes

█ The marking statute serves three related purposes: 1) helping to avoid innocent infringement, *see Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.,* 297 U.S. 387, 395, 56 S.Ct. 528, 530, 80 L.Ed. 736 (1936); *Motorola, Inc. v. United States,* 729 F.2d 765, 772, 221 USPQ 297, 302 (Fed.Cir.1984); 2) encouraging patentees to give notice to the public that the article is patented, *see Amsted Industries v. Buckeye Steel Castings,* 24 F.3d 178, 185, 30 USPQ2d 1462, 1468 (Fed. Cir.1994); *American Medical Systems v. Medical Eng'g Corp.,* 6 F.3d 1523, 1537, 28 USPQ2d 1321, 1331 (Fed.Cir.1993); and 3) aiding the public to identify whether an article is patented, *see Bonito Boats Inc. v. Thunder Craft Boats Inc.,* 489 U.S. 141, 162, 109 S.Ct. 971, 983, 103 L.Ed.2d 118, 9 USPQ2d 1847, 1856 (1989).

The early patent statutes contained no marking requirement. As explained in *Boyden v. Burke,* 55 U.S. (14 How.) 575, 582–83, 14 L.Ed. 548 (1852), patents were public records and all persons were "bound to take notice of their contents." A duty to mark was imposed by the Patent Act of 1842, which required "all patentees and assignees of patents ... to stamp ... on each article vended, or offered for sale, the date of the patent." Act of 1842, 5 Stat. 543, 544. If the patentee failed to mark each article, the penalty was a fine of "not less than one hundred dollars." *Id.* In 1861 the statute was amended to delete the statutory penalty, and instead to place a limitation on the patentee's right to recover for infringement. The Patent Act of 1861, 12 Stat. 246, 249, provided that "no damage shall be recovered by the plaintiff" unless that person marked the article as patented or the infringer received actual notice of the patent.

The marking provision has not been substantially changed since 1861. The 1870 Act, 16 Stat. 198–217, provided that "in any suit for infringement, by the party failing so to mark, no damages shall be recovered by the plaintiff." The 1927 Act, 44 Stat. 1058, provided that "in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff." The 1952 Act, 35 U.S.C. § 287(a), provides that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement." These provisions remained constant through the various changes in remedy for patent infringement outlined *supra,* including the consolidations of legal and equitable relief, the provision for recovery in the same action of the infringer's profits and the patentee's losses, the 1887 special remedy for design patent infringement, and the 1952 codification.

In cases decided around the time of enactment of the 1861 marking statute, the Supreme Court and other courts used the word "damage" or "damages" to encompass the patentee's monetary recovery whether it was derived from the infringer's profits or the patentee's losses. For example, in 1857 the Court, reviewing a bill in equity, used "prof-

its" to define "damages," describing the rule as "the amount of profits received by the unlawful use of the machines, as this, in general, is the damage done to the owner of the patent." *Dean v. Mason*, 61 U.S. (20 How.) 198, 203, 15 L.Ed. 876 (1857).

After the marking Act of 1861 the courts generally used the word "damages" in the broad sense of monetary recovery for infringement, whether the amount was measured by the infringer's profit or the patentee's loss. For example, in *Mowry v. Whitney*, 81 U.S. (14 Wall.) 620, 653, 20 L.Ed. 860 (1871) the Court referred to the infringer's profits as "the measure of [the patentee's] damages." In *Birdsall*, 93 U.S. (3 Otto) at 69, the Court stated that after the Act of 1870 the infringer's profits were "still the proper measure of damages" in equity suits.

Judicial interpretation has been quite consistent over the decades, the great weight of authority holding that the marking statute applies to actions for recovery of the infringer's profits. *See, e.g., Horvath v. McCord Radiator & Mfg. Co.*, 100 F.2d 326, 337 (6th Cir.1938) (no action for an accounting of profits unless the plaintiff marks or gives actual notice); *O'Nate v. Bahr*, 67 F.2d 180, 182 (9th Cir.1933) (notice is required to recover "damages or profits"); *Van Meter v. United States*, 47 F.2d 192, 196 (2d Cir.1931) (failure to mark precludes recovery of infringer's profits prior to actual notice); *Franklin Brass Foundry Co. v. Shapiro & Aronson, Inc.*, 278 F. 435, 442 (3d Cir.1921) ("no escape from the conclusion that the word 'damages,' as used in R.S. Sec. 4900 [the marking statute], includes profits"); *Gibson v. American Graphophone Co.*, 234 F. 633, 635 (2d Cir.1916) (recovery by accounting for profits limited to acts of infringement after notice is given); *American Caramel Co. v. White*, 234 F. 328, 333 (7th Cir.1915) (same); *Lichtenstein v. Phipps*, 168 F. 61, 62 (2d Cir.1909) (proof of notice required "to entitle [patentee] to recover damages, profits, or statutory penalty.") In 1922 the Eighth Circuit conducted an exhaustive review of Supreme Court and lower court case law, and concluded:

[T]he great weight of authority by expressed holding and by inferences from judicial language is that the term 'dam-

ages' in section 4900 [the marking statute] is used in its general sense and includes profits as a measure of damages. There are so many cases to this effect and it may accurately be said that their weight is overwhelming as compared with those to the contrary.

*Flat Slab Patents Co. v. Turner*, 285 F. 257, 269 (8th Cir.1922). We concur in the analysis that the courts have not distinguished between remedies in requiring either actual or constructive notice, whether the proposed remedy is the infringer's profits or the patentee's losses. Precedent and the marking statutes have used the term "damages" to encompass both sources of recovery. The widespread contemporary use of the word "damages" to mean the monetary recovery from infringement demands the conclusion that Congress did not limit the marking statutes to recovery measured only by the patentee's losses. *See United States v. Wells*, ⸺ U.S. ⸺, ⸺, 117 S.Ct. 921, 929, 137 L.Ed.2d 107 (1997) (Congress expects its statutes to be read in conformity with Supreme Court precedent). Case law and the statutory provisions for marking have changed very little since the marking Act of 1861. This constancy has been preserved, independent of the legislative and judicial changes in remedies for infringement.

The independent development of infringement remedies and the marking statute has produced this rare example wherein a term has a different scope in different provisions of a now-consolidated statute. In the 1952 Act, as in previous marking re-enactments, the case law requirement of marking in connection with an accounting for profits, *e.g.*, in *Dean v. Mason*, *Mowry v. Whitney*, and *Birdsall v. Coolidge*, was neither revoked nor discussed. "Since we must recognize that the Congress was fully aware of judicial constructions of a prior statute during the enactment of subsequent legislation encompassing that prior statute, our interpretation of the subsequent legislation must include the prior judicial constructions unless they were explicitly revoked by Congress." *Motorola, Inc. v. United States*, 729 F.2d 765, 770, 221 USPQ 297, 301 (Fed.Cir.1984) (citing *Blake*

*v. McKim,* 103 U.S. (13 Otto) 336, 339, 26 L.Ed. 563 (1880)).

The conclusion that the marking statute with its use of the word "damages" applies broadly to include recovery of the infringer's profits under the special provision for design patent infringement is strongly reinforced by historical expressions of congressional concern about notice for design patent infringement. The Act of 1887 was accompanied by assurances that the infringer would not be liable if he did not know that the design was patented. The statute imposed liability only upon a person who acts "knowing that the [design] has been so applied" without authority. Act of 1887, 24 Stat. 387–88. The House Report explained that "an innocent dealer or user is not affected." H.R.Rep. No. 1966 at 4 (1886). The floor debate in 1887 was to similar effect. *See* 18 Cong. Rec. 835 (1887) (statement of Rep. Butterworth: "[N]o man will suffer either penalty or damage unless he willfully appropriates the property of another.") In *Dunlap v. Schofield,* 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894) the Court reversed an award of the statutory penalty of $250 because the owner of the design patent failed to prove that the design was copied by the alleged infringer "knowing that the same has been so applied." The Court held that the phrase "knowing that the same has been so applied" in the Act of 1887 was "equivalent to saying 'with a knowledge of the patent and of his infringement.'" *Id.* at 248–50, 14 S.Ct. at 577–78.

With such steady emphasis on knowledge of or notice of the patent, as a matter of fairness, we doubt that both actual and constructive notice were silently abandoned, either by Congress or the courts, as applied to § 289 and design patents. Although in the 1952 codification the phrase "knowing that the same has been so applied" was omitted in writing § 289, that omission is explicable only on the ground of redundancy with the marking statute codified at § 287. To view it otherwise would be to accept that a major substantive change was made in silence or by implication. Congress and the draftsmen of the 1952 Act can not have intended to eliminate both actual and constructive notice from liability under § 289, after a century of legislative concern about notice. Commentators are in agreement. Professor Chisum states that although some trial courts have varied in their view of whether "profits" under § 289 are "damages" within the meaning of § 287(a), most courts have held that "damages" as used in the marking statute includes "profits." 7 D. Chisum, *Patents* § 20.03[7] at 20–530 (Rel.46, 1993).

Nike stresses this court's decision in *Braun,* wherein the court held that the provision for enhancement of "damages" of § 284 does not authorize enhancement of profits recovered under § 289. Section 284 states that a patentee may recover "damages adequate to compensate for the infringement" which "the court may increase ... up to three times." However, the decision in *Braun* was based not on drawing a rigorous distinction between "damages" and "profits," but on the provision of § 289 that bars the design patentee, upon recovering the infringer's profits, from "twice recover[ing] the profit made from the infringement." Nike argues that in view of *Braun* a ruling that § 287(a) controls a recovery under § 289 would give the term "damages" different meanings in two different provisions of Title 35. Nike points to the anomaly if the "damages" provision of § 287(a) is held to embrace profits and thus to require marking for recovery under § 289, while the treble "damages" provision of § 284 under *Braun* does not apply to recovery of profits under § 289. We agree that the result is anomalous. However, *Braun* relates to multiplied recovery, not to notice, and is distinguishable.

As between § 284 and § 287(a), the usage of "damages" is readily understood in light of history. Although there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning, "[i]t is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance." *Atlantic Cleaners & Dyers, Inc. v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932); *accord NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, 262, 115 S.Ct. 810, 816, 130

L.Ed.2d 740 (1995) ("meaning [of words] well may vary to meet the purposes of the law"); *District of Columbia v. Carter*, 409 U.S. 418, 421, 93 S.Ct. 602, 604–05, 34 L.Ed.2d 613 (1973) (same). In *Franklin Brass*, the Third Circuit, in holding that the marking statute limited a recovery of infringer's profits, noted this anomaly in its interpretation of the predecessors to §§ 284 and 287(a):

> [I]f the use of the word "damages" in section 38 [the marking statute] and again in section 55 [the general damages provision] gives rise to a presumption that the word is used in the same sense in each section, that presumption is more than overcome by the history of the two sections and the decisions of the Supreme Court.

278 F. at 442. Should this court now limit the word "damages" in the marking statute to a compensatory recovery at law, we ignore the history of marking as applied to recovery of profits in equity, and negate the purpose of the marking statute, *i.e.*, to give notice and thus to prevent innocent infringement, *see Wine Railway*, 297 U.S. at 395, 56 S.Ct. at 530. Indeed, a general principle of the common law is that although there may be liability without actual or constructive notice of adverse rights, damages therefor are rarely greater than nominal. Statute and precedent have shown concern for the principles of fairness that underlie this principle.

Upon review of statute, legislative history, policy, and precedent, we conclude that the marking requirement, § 287(a), applies to design patents whether remedy for infringement is sought under § 284 or § 289.

## II

### COMPLIANCE

■ It remains to be determined whether Nike complied with the marking statute. The patentee bears the burden of proving compliance by a preponderance of evidence. The district court held that marking was not required, and did not review the evidence or resolve disputed facts.

■ The appellants direct attention to the district court's reference to "marking" in its analysis of willfulness of the infringement, the court finding that "[t]he shoes of which Wal–Mart was aware, it should be noted,

were unmarked with any patent number." *Nike*, 41 USPQ2d at 1149. However, the issue of willfulness turns on the actual knowledge of the infringer, and is unrelated to the adequacy of constructive notice by the patentee. In determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, the focus is not on what the infringer actually knew, but on whether the patentee's actions were sufficient, in the circumstances, to provide notice *in rem*. *See Amsted Industries v. Buckeye Steel Castings*, 24 F.3d 178, 187, 30 USPQ2d 1462, 1469 (Fed.Cir.1994) ("The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer."); *American Medical Systems v. Medical Eng'g Corp.*, 6 F.3d 1523, 1537, 28 USPQ2d 1321, 1331 (Fed.Cir.1993) (it is not the number of articles seen by the defendant that controls the issue of marking, but whether the patentee performed his or her statutory duty).

■ In *American Medical* the court held that full compliance with the marking statute was not achieved until the patentee "consistently marked substantially all" of the patented products, and was no longer distributing unmarked products. 6 F.3d at 1538, 28 USPQ2d at 1332. In order to satisfy the constructive notice provision of the marking statute, Nike must have shown that substantially all of the Air Mada Mid shoes being distributed were marked, and that once marking was begun, the marking was substantially consistent and continuous.

Nike states that all Air Mada Mid shoes produced in all factories after December 1, 1994 bore tongue labels (labels showing patent numbers, country of origin, manufacturing codes, etc.) with the D'765 patent number. Nike states that fashion sneakers move rapidly through the retail chain, and that substantially all unmarked Air Mada Mid shoes were replaced on the shelves by marked Air Mada Mid shoes by the time of infringement. Nike states that as of March 1, 1995, 96.6% of the Air Mada Mid shoes distributed by Nike to its retail customers in the U.S. were marked. Hawe Yue's first shipment to Wal–Mart was in April 1995 and

Wal–Mart's first retail sales in May 1995. Nike argues that even if a few unmarked shoes could later be found in outlet stores and distribution centers, this residue of its early production does not negate its full compliance with the marking statute before the infringement began.

The appellants state that Nike continued to distribute unmarked shoes in the United States and to sell unmarked shoes from its outlet stores, even after suit was filed. According to the appellants, Nike failed to request marking for 13 models of shoes covered by the D'765 patent. The appellants dispute Nike's 96.6% figure and state that Nike can not prove its assertions concerning marking because the supporting documents had been routinely destroyed during Nike's document retention program.

On these disputed allegations we can not decide, *ab initio* on appeal, whether Nike met its burden of showing, by a preponderance of the evidence, that it complied with the marking statute, or when that compliance was achieved. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111, 39 USPQ2d 1001, 1010 (Fed.Cir.1996) (compliance with the marking statute is a question of fact, and the burden of proving compliance with the marking statute is upon the patentee). We remand for determination of this question by the district court.

## III

### ACCOUNTING.

#### A

■ Wal–Mart and Hawe Yue challenge the accounting method adopted by the district court. We review whether the district court's methodology was an abuse of discretion and whether the district court's factual findings were clearly erroneous. *See King Instruments Corp. v. Perego*, 65 F.3d 941, 952, 36 USPQ2d 1129, 1137 (Fed.Cir.1995).

■ The parties stipulated to the dollar amount Wal–Mart and Hawe Yue generated from sales of the infringing shoes. It was agreed that Wal–Mart and Hawe Yue had the burden of proving costs deductible from revenues in arriving at a profit figure. Their expert produced a report, but the district court excluded it because of the timing of its

production to Nike. The district court adopted the general methodology of Nike's expert, but deducted certain cost items that Nike's expert stated should not be deducted. Specifically, the court subtracted from Wal–Mart's revenue the direct cost of freight-in and the indirect costs of customer returns, shrinkage, and attributable indirect expenses.

Wal–Mart argues that the district court should have credited it with additional costs. Specifically, Wal–Mart asserts that its shoe division "Profit and Loss" statements were the best evidence of costs. The district court stated that "were these statements supported by any documentary evidence or disclosure, they would be relevant," but that Wal–Mart had declined to produce such evidence. The district court did not clearly err in its findings that Wal–Mart had proved some direct and indirect costs, and had failed to prove others.

In computing Hawe Yue's profits, the district court subtracted from revenue certain commissions and royalties as costs. However, the district court refused to deduct Hawe Yue's claimed overhead expenses, because Hawe Yue failed to present any supporting evidence. Hawe Yue sought to deduct these expenses on a pro rata basis as a percentage of pairs sold, but did not produce the actual business records that Hawe Yue used to compute the ratio of infringing pairs to total pairs of shoes sold during the relevant period. The district court's finding that Hawe Yue failed to prove its overhead expenses was not clearly erroneous.

We have not been shown reversible error in the court's methodology in calculating either Wal–Mart's or Hawe Yue's profits.

#### B

■The parties disagree as to whether the award should be based on pre-tax profits or post-tax profits. The district court cited conflicting opinions of circuit courts, and awarded Nike pre-tax profits.

The appellants state that they should be required to pay only their post-tax profits, citing *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 29 USPQ2d 1356 (2nd Cir.1994),

a copyright case, for the proposition that for a nonwillful infringer the award should be based on post-tax profits.

Nike argues that the award should be based on pre-tax profits, citing *Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1169–71, 206 USPQ 202, 207–09 (6th Cir. 1980), a § 289 case; and *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482–83, 16 USPQ2d 1093, 1102 (Fed.Cir.1990), a case involving a § 284 lost profits calculation. Nike points out that an award of only the infringers' post-tax profits would leave the appellants in possession of their tax refunds, and that if the appellants still enjoy a profit the award can not be their "total profits" as mandated by the statute. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 503, 88 S.Ct. 2224, 2236, 20 L.Ed.2d 1231 (1968); *Kalman*, 914 F.2d at 1482–83, 16 USPQ2d at 1102 (citing *Hanover Shoe*). The district court agreed with that position, as do we. The statute requires the disgorgement of the infringers' profits to the patent holder, such that the infringers retain no profit from their wrong.

## IV

### SUMMARY

We reverse the district court's ruling that the marking statute does not apply to recovery for design patent infringement under § 289, and remand for determination of whether Nike in fact complied with the marking requirement. We affirm the district court's methodology on the accounting issues.

### Costs

No costs.

*AFFIRMED IN PART, REVERSED IN PART AND REMANDED.*