In re AI REALTY MARKETING OF NEW YORK, INC., Laser Acquisition Corp., DDG I, Inc., Sunbeam Americas Holdings, Ltd., et al., Debtors.

Sunbeam Products, Inc. Plaintiff–Counterclaim Defendant,

v.

Wing Shing Products (BVI) Ltd., Defendant–Counterclaimant.

Bankruptcy No. 01–40252(AJG).
Adversary No. 01–02439(AJG).

United States Bankruptcy Court,
S.D. New York.

Feb. 13, 2004.

Fish & Neave (Herbert F. Schwartz, Esq., Douglas J. Gilbert, Esq., of counsel), New York City, for Sunbeam Products, Inc.

Weil, Gotshal & Manges, LLP (Kevin P. Hughes, Esq., Nicholas Groombridge, Esq., of counsel), New York City, for Sunbeam Products, Inc.

Perkins & Dunnegan (William Dunnegan, Esq., Ronald L. Zaslow, Esq., of counsel), New York City, for Wing Shing Products (BVI) Ltd.

## DECISION AND ORDER REGARDING RESEARCH AND DEVELOPMENT COSTS AND TAXES

ARTHUR J. GONZALEZ, Bankruptcy Judge.

### I. INTRODUCTION

Before the Court is a motion brought in the above-captioned adversary proceeding by Sunbeam Products, Inc. for clarification and/or reconsideration of the Court's June 3, 2003 memorandum decision, after trial, regarding the ownership and infringement of U.S. Patent No. D348,585 (the "June 3rd Decision"), *Sunbeam Products, Inc. v. Wing Shing Products (BVI) Ltd. (In re AI Realty Marketing of New York, Inc.)*, 293 B.R. 586 (Bankr.S.D.N.Y.2003), concerning the recovery of post-suit profits.[1] In an order issued on June 17, 2003, the Court instructed Sunbeam to provide a pro-forma income statement, consistent with the Court's findings in Section (IV)(D) of the June 3rd Decision, setting forth its operating profits earned from the sale of infringing AD Coffeemakers produced by Simatelex from February 9, 2001 through the order's publication date (the "Infringement

---

1. For purposes of this decision and order, the Court is assuming familiarity with the June 3rd Decision. Unless otherwise indicated, capitalized terms used herein shall be ascribed their meaning in that decision.

Period"). Sunbeam served and filed an updated pro-forma income statement on July 17, 2003. It subsequently filed this motion on September 19, 2003, asserting that: (i) alleged research and development expenses incurred during the Infringement Period should be deducted in the calculation of Sunbeam's profits; and (ii) profits should be based on net income after taxes. A hearing was held concerning these issues on October 10, 2003.

## II. DISCUSSION

### A. Alleged Research and Development Expenses May Not Be Deducted in the Calculation of Sunbeam's Profit

The Court held in the June 3rd Decision that "[t]he inclusion or exclusion of fixed costs [in calculating profits] is a matter for the Court to determine in its discretion." *In re AI Realty Marketing of New York*, 293 B.R. at 618. The Court further held that the decision as to whether fixed expenses should be deducted from total costs should be treated as a question of fact. *Id.* Those costs properly attributable to the infringing AD Coffeemakers were deducted from Sunbeam's profits; those costs not clearly attributable to the AD Coffeemakers were not. *Id.* at 619. Sunbeam bore the burden of demonstrating the nature and amount of alleged costs, as well as their relationship to the infringing products. *Id.* at 618. Sunbeam also bore the burden of presenting a fair and acceptable formula for allocating fixed overhead. *Id.* at 619.

Sunbeam now argues that research and development costs allegedly incurred during the Infringement Period should be deducted from its profits. In support, Sunbeam has provided a vague list of six seemingly minor changes that were made to the AD Coffeemakers. Sunbeam contends that the cost of these changes should be allocated as a percentage of sales. It relies upon the Court's determination that this was a fair and acceptable method with regard to those costs deducted in the June 3rd Decision. However, the Court finds that Sunbeam has not met its current burden of sufficiently demonstrating the nature and amount of the costs associated with the alleged research and development, or of presenting a fair and acceptable formula of allocating fixed overhead with respect to such costs.

Whereas the Court agreed in the June 3rd Decision with Sunbeam's assertion that it would be extremely difficult to assign line items to particular models or suppliers with regard to those costs that were permitted to be deducted, the present alleged research and development costs are distinguishable in light of the fact that Sunbeam has produced a list of six specific changes that were made to the AD Coffeemakers during the Infringement Period. Since Sunbeam was able to identify particular, seemingly minor changes, it should have attempted to approximate the costs incurred therewith or to better explain its inability to do so. Having failed to provide any detail on the extent or cost of these six seemingly minor changes, or to render a convincing explanation as to why it cannot meet its burden, Sunbeam has failed to sufficiently demonstrate the nature and amount of these costs.

Sunbeam has also failed to meet its burden of presenting a fair and acceptable formula of allocating fixed overhead. It would not be fair and acceptable to use a percentage of sales approach in connection with the allocation of research and development costs for the six changes to the AD Coffeemakers where, as discussed above, Sunbeam should have been able to estimate the costs incurred in effectuating them.

Since Sunbeam has not sufficiently demonstrated the nature and amount of the research and development costs relating to the AD Coffeemakers or provided a fair and acceptable method of allocating fixed overhead regarding such costs, the alleged research and development costs associated with the AD Coffeemakers during the Infringement Period may not be deducted for purposes of calculating Sunbeam's profits.

## B. Sunbeam May Not Deduct Unpaid Taxes from Its Profits

■ Sunbeam further argues that its profit calculations should be based on net income after taxes. Sunbeam relies on the Second Circuit's ruling in *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559 (2d Cir. 1994), which held that, in appropriate cases, income tax expenses should be included in deductible overhead when determining a defendant's net profit. *Id.* at 567. Wing Shing responds that Sunbeam should not be allowed to deduct corporate taxes from its profits since it did not pay any such taxes during the Infringement Period.[2] The Court agrees that Sunbeam should not be entitled to deduct an amount based on taxes not actually paid during the Infringement Period.

*In Design v. K-Mart Apparel Corp.*, 13 F.3d at 567 (quoting *MacBeth-Evans Glass Co. v. L.E. Smith Glass Co.*, 23 F.2d 459, 463 (3d Cir.1927)), states, "when a claim is made for infringing profits, 'this means profits actually made. A book prof-

it of a dollar is not a profit actually made when from the dollar the government takes twenty cents as the price for the right to make any profit at all.' " Sunbeam does not contest the assertion that it has paid no corporate taxes since the beginning of the Infringement Period, though it argues that it should receive a deduction based on its loss carryover being lower than it otherwise would have been as a result of the profits attributable to the AD Coffeemakers. This position is inconsistent with the court's ruling in *In Design*, which clearly states that a deduction should be allowed for taxes "paid," but does not suggest that a deduction is permitted for taxes offset against net operating losses.

In fact, *In Design* specifically rejects "[h]ypothetical discussions of possible indirect tax ramifications," focusing instead on taxes actually paid. *Id.* The loss carryover relied upon by Sunbeam is such a hypothetical; the future impact, if any, of Sunbeam's net operating losses cannot be ascertained at present. Moreover, courts have disallowed deductions for taxes offset against net operating losses, holding that a defendant may only deduct taxes that it actually paid from its calculation of profits. *See Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 488 (9th Cir.2000); *also Burns v. Imagine Films Entertainment, Inc,* No. 92–CV–2438, 2001 WL 34059379, at *9, 2001 U.S. Dist. LEXIS 24653, at *27–28 (W.D.N.Y. August 23, 2001). Sunbeam has not produced contrary authority.[3]

---

**2.** Wing Shing also contends that the Court should apply *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437 (Fed.Cir.1998), which held that an infringer should pay an award based on pre-tax profits, rather than *In Design.* However, the Court need not address this issue because Sunbeam's argument fails under *In Design.*

**3.** Although not dispositive, the Court notes that it is likely that ultimately there will be no

tax ramifications attributable to the infringing AD Coffeemakers. In the tax year that Sunbeam pays the damages, representing the actual profits derived from the AD Coffeemakers, to Wing Shing, Sunbeam's net operating loss will increase by such amount to the level it would have been had the actual profits (damages) not reduced Sunbeam's net operating loss previously.

**626**

Sunbeam also contends, again without citing applicable authority, that if the lack of taxes paid by Sunbeam during the Infringement Period is relevant, then the lack of profits for the company as a whole should likewise preclude any recovery in connection with the AD Coffeemakers. The Court disagrees. As discussed in the June 3rd Decision, 35 U.S.C. § 289 provides for payment of an infringer's "total profit" to a patent holder. Total profit is based upon the amount of infringing sales less appropriate costs. *See In re AI Realty Marketing of New York*, 293 B.R. at 618. Sunbeam's overall corporate profits do not impact the amount of infringing sales or, by extension, its "total profit." However, as discussed above, its failure to pay taxes during the Infringement Period does prevent Sunbeam from deducting its unpaid taxes as a related cost.

In light of the fact that Sunbeam did not pay taxes during the Infringement Period, the Court finds that Sunbeam may not deduct unpaid taxes attributable to its profits from the AD Coffeemakers from its total profits.

### III. CONCLUSION

For the above reasons, neither the alleged research and development costs nor the unpaid taxes attributable to Sunbeam's profits from the AD Coffeemakers may be deducted from its total profit. Sunbeam is instructed to file a revised pro-forma income statement consistent with this decision and order within fifteen days of the date hereof. Upon receipt of the income statement, Wing Shing is directed to settle an order on five days notice stating the final amount of damages.