**HALLIBURTON SERVICES, Plaintiff,**

v.

**SMITH INTERNATIONAL INC., Defendant.**

No. 4:02–CV–269.

United States District Court,
E.D. Texas,
Sherman Division.

May 6, 2004.

Eric William Buether, Arthur Isaac Navarro, Godwin Gruber, Dallas, TX, Michael Edwin Jones, Potter Minton, Tyler, TX, for Plaintiff.

Alan David Rosenthal, Rosenthal & Osha, William C. Slusser, Slusser, Wilson & Partridge, Houston, TX, Otis W. Carroll, Jr., Ireland, Carroll & Kelley, PC, Tyler, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court are Smith's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a) Due to Halliburton's Failure to Mark (Docket No. 121), Halliburton's Motion to Dismiss as Moot Smith's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a) Due to Halliburton's Failure to Mark (Docket No. 152), and Halliburton's Motion for Leave to File Delayed Response to Smith's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a) Due to Halliburton's Failure to Mark (Docket No. 154). Having considered the parties submissions and the underlying procedural history, the Court **DENIES** Halliburton's motion to dismiss (Docket No. 152), **GRANTS** Halliburton's motion for leave to file (Docket No. 154), and **GRANT IN PART AND DENIES IN PART** Smith's motion for partial summary judgment (Docket No. 121).

## BACKGROUND AND PROCEDURAL HISTORY

This action involves Smith's alleged infringement of Halliburton's patents concerning drill bits and methods of designing drill bits used in down-hole oil and gas drilling operations. Specifically, Halliburton has sued Smith for making drill bits that allegedly infringe Patents 6,213,225 (the "'225 Patent"), 6,095,262 (the "'262

Patent"), and 6,412,577 (the "'577 Patent"). The '225 Patent concerns "roller cone" type drill bits. A roller cone drill bit is a bit with a set of cones, usually three, attached to each of the bit's arms. The cones point inwards toward each other and have rows of "teeth" protruding from their faces. As the drill string rotates the bit, the cones roll along the surface and the teeth grind or scrape formation out of the well bottom. The '225 Patent purports to improve methods of designing roller cone bits and to improve the bits themselves by balancing both the force exerted on each of the cones ("force balancing") and the amount of volume each cone removes ("volume balancing"). Additionally, the '262 and '577 Patents [1] attempt to improve drilling efficiency by designing bits that balance the wear on cone teeth caused by drilling on hard formation against tooth penetration on soft formation. The '262 and '577 Patents claim a design process whereby a bit designer may input the bit geometry and formation type into a simulation which calculates the optimal tooth orientation on the roller cone drill bit based on the calculated tooth trajectory through the formation.

Smith alleges that Halliburton did not mark patented products with the appropriate patent numbers. It is undisputed that the '225 Patent, issued on August 1, 2000, is the earliest-issued of the patents in dispute. It is also undisputed that Halliburton made, sold, and offered for sale its patented drill bits between the August 1, 2000 issuance and this action's filing on September 6, 2002. According to Smith, Halliburton marked neither the '225 nor '262 Patent numbers on its products until "some time after July 26, 2002," and

did not mark the '577 Patent number until after suit was filed.

Smith moved for summary judgment alleging that Halliburton' failure to mark precludes recovery of damages under 35 U.S.C. § 287. Under the marking statute, 35 U.S.C. § 287(a), to recover damages for infringement, a patentee must adequately mark patented products with the patent number or give the alleged infringer notice of patent protection. Smith argues that Halliburton's failure to mark patented drill bits violates the Marking statute and precludes recovery of any damages that may be incurred under the '262 and '225 Patents before July 26, 2002 and under the '577 Patent before September 6, 2002.[2] Smith alternatively argues that Halliburton cannot recover any damages before suit was filed on September 6, 2002 because the Marking statute requires a patentee to actually ship marked products and because Halliburton has no evidence that products were shipped prior to the filing date.

Halliburton responds by arguing that damages should begin to accrue on all patents at issue on August 1, 2002. With regard to the '262 and '225 Patents, Halliburton alternatively argues that the Marking statute includes no "shipping" requirement or that Halliburton marked and shipped its drill bits prior to August 1, 2002. With regard to the '577 Patent, Halliburton argues that the Marking statute does not apply because Halliburton has asserted only the '577 Patent's method claims. Thus, Halliburton contends that damages under the '577 Patent should begin to accrue on its issuance date, July 2, 2002. However, "in an effort to simplify the damage calculations [Halliburton] has

---

1. The '577 Patent is a continuation of the '262 Patent.

2. The Court notes that Smith does not concede liability under any patent but only argues to limit any damages that may be incurred.

stipulated that the damages period for all of the patents-in-suit should start on August 1, 2002 . . . ." Halliburton's Motion to Dismiss (Docket No. 152), p. 6.

## HALLIBURTON'S MOTION TO DISMISS AS MOOT

Before the Court can address the substantive marking issue, the Court must first consider this issue's unusual procedural posture. The certificate of service indicates that Smith served its motion for partial summary judgment on March 25, 2004 by Federal Express overnight delivery. Thus, pursuant to Local Rule CV–7, Halliburton's response was due April 9, 2004. L.R. CV–7 ("a party opposing a motion has 15 days from the date the motion was served in which to serve and file a response and any supporting documents"); *see also Prince v. Poulos,* 876 F.2d 30, 32 n. 1 (5th Cir.1989) ("Since Federal Express is not a public authority, they are not a form of 'mail' and need not be utilized under Rule 25(a)."). However, due to attempts between the parties to resolve the marking issue without the Court's intervention, Halliburton failed to file a timely response. Negotiations having apparently failed, on April 19, Smith addressed a letter to the Court requesting the Court to grant Smith's motion to dismiss as unopposed.[3] On April 20, Halliburton filed both a motion to dismiss Smith's motion to dismiss as moot, and a motion for leave to file a delayed response Smith's motion to dismiss. Interestingly, Halliburton's proposed late response does not more than incorporate by reference Halliburton's motion to dismiss Smith's motion as moot. The response declares that "Halliburton's stipulation [that damages begin to run on August 1, 2002] and Marking MTD fully resolve the matters raised in Smith's Marking MSJ."

The Court is inclined to grant Halliburton's motion to file a late response. Although Halliburton's response was 11 days late in this case, the Court will accept it for two reasons. First, the Court finds that an 11 day delay will not prejudice Smith in this circumstance. Second, the Court generally encourages litigants to resolve issues without judicial intervention and would not punish Halliburton in this instance for making good faith attempts to resolve the marking issue.

However, the Court denies Halliburton's motion to dismiss Smith's motion. First, the Court notes that Halliburton's response and motion to dismiss are identical and thus duplicative. Second, in this instance, the Court would rather accept a late response than rule on the possible implications of allowing parties to disguise late-filed responses as motions to dismiss other motions. Because the Court appreciates parties' attempts to resolve certain issues without judicial intervention, the Court chooses to consider Halliburton's motion to dismiss as a good faith filing based on a stipulation to limit damages rather than a procedural end-run around this Court's deadlines. The Court denies Halliburton's Motion to Dismiss as Moot Smith's Motion for Partial Summary Judgment Under 35 U.S.C. § 287(a) Due to Halliburton's Failure to Mark (Docket No. 152) as duplicative of Halliburton's response to Smith's motion, but will consider the arguments and stipulations as incorporated into Halliburton's response.

## HALLIBURTON'S FAILURE TO MARK

Smith's motion for summary judgment raises two separate issues for the Court to resolve. First, in regard to the '262 and '225 Patents, the parties agree that Halliburton began marking its products in

---

**3.** Smith also sent copies of the letter to all opposing and local counsel.

late July 2002. The parties however dispute whether Halliburton may recover damages for products that were marked but not distributed to the public. Second, in regard to the '577 Patent, the parties dispute whether the marking statute applies where a patentee only asserts method claims from a patent containing both method and application claims.

*The Marking Statute*

■■■ Patentees must comply with the Marking statute in order to recover damages for infringement. The statute provides in relevant part:

> Patentees ... making, offering for sale, or selling ... any patented article ... may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). Generally, under the marking statute, a party "is entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] of its infringement, whichever is earlier." *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1537 (Fed.Cir.1993). "In determining whether the patentee marked its products sufficiently to comply with the constructive notice requirement, the focus is not on what the infringer actually knew, but on whether the patentee's actions were sufficient, in the circumstances, to provide notice *in rem.*" *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed.Cir.1998).

■■■ The patentee bears the burden of proving compliance by a preponderance of the evidence. *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed.Cir. 1998). Compliance with the marking statute is a question of fact. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir.2001) *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002). Consequently, the marking issue "is properly decided upon summary judgment when no reasonable jury could find that the patentee either has or has not provided actual notice to the particular defendants by informing them of his patent and their infringement of it." *Id.* Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R. CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*The '262 and '225 Patents*

■ Where a patentee has distributed unmarked products, damages do not begin

to accrue under the Marking statute, 35 U.S.C. § 287, until the patentee distributes marked products and stops distributing unmarked products. *American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1537–38 (Fed.Cir.1993). In *American Medical Systems,* the patentee began shipping marked products after it had shipped "more than a de minimus" number of unmarked products. *Id.* at 1534. After shipping unmarked products, the patentee began marking its products. The Federal Circuit held that

> The date that [the patentee] began marking its products is irrelevant for purposes of the [marking] statute, because marking alone without distribution provides no notice to the public where unmarked products are continuing to be shipped.... [The patentee] was not in full compliance with the marking statute while it continued to ship its unmarked products, which continued to mislead the public into thinking that the product was freely available. Full compliance was not achieved until [the patentee] consistently marked substantially all of its patented products, and it was no longer distributing unmarked products.

*Id.* at 1538. The Court finds that *American Medical Systems* applies here because the summary judgment evidence indicates that Halliburton initially shipped unmarked products and subsequently began marking and shipping marked products.[4] Thus, the Court must determine whether Halliburton has presented sufficient evidence to raise a genuine issue regarding both when it began distributing marked

products and ceased distributing unmarked products. *See Id.*

■ The Court finds that Halliburton has raised a genuine issue of material fact as to when it began shipping marked products. Halliburton does not dispute that it failed to mark its products with the '262 and '225 patent numbers until July 26, 2002. Halliburton's Motion to Dismiss (Docket No. 152), p. 2.[5] However, Halliburton's affidavit testimony suggests that it shipped marked bits after July 26, and declares in relevant part:

> The packaging for Energy Balanced bits sold or shipped by Halliburton subsequent to July 2002 was marked with a sticker stating that the bit is covered by various United States patent including U.S. Patent Nos. ['262] and ['225], and Halliburton sold and shipped to customers Energy Balanced bits which were marked beginning as early as the last week of July 2002.

Halliburton's Motion to Dismiss (Docket No. 152), Exhibit A. The Court declines to accept Smith's argument that Halliburton's affidavit testimony suggests only when the bits were marked and gives no indication as to when marked bits were shipped. In this summary judgment context, the Court draws all inferences in favor of the nonmovant[6] and reads Halliburton's affidavit testimony as evidence that Halliburton began shipping marked bits "as early as the last week of July 2002."

The Court also finds that Halliburton has raised a genuine issue of material fact as to when it stopped shipping unmarked

---

**4.** Halliburton admits that it did not begin marking its products until the end of July 2002 and the Deposition of William W. King, attached as Exhibit 3 to Smith's motion, declares that Halliburton both sold and shipped the patented drill bits prior to July 2002.

**5.** The Court continues to cite to Halliburton's motion to dismiss (Docket No. 152), despite

having dismissed said motion because the Court accepted Halliburton's late-filed response which incorporated that motion to dismiss by reference. *See* "HALLIBURTON'S MOTION TO DISMISS AS MOOT" *supra.*

**6.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

bits. The above-cited affidavit testimony declares that "the packaging for Energy Balanced bits sold or shipped by Halliburton subsequent to July 2002 was marked with a sticker stating" that the bits were covered by the relevant patents. Halliburton's Motion to Dismiss (Docket No. 152), Exhibit A. Although the affiant did not say "the packaging for *all* Energy Balanced bits" shipped after July 2002, the Court reads the summary judgment evidence in the light most favorable to the non-movant and finds that the affiant intended to declare that all bits shipped after July 2002 were marked. Therefore, the Court must deny Smith's motion for summary judgment regarding the '262 and '225 Patents.

*The '577 Patent*

█ Smith also argues that Halliburton cannot recover damages prior to this suit's filing date because Smith failed to mark the '577 Patent number on its products. Although the '577 Patent contains both method and apparatus claims, Halliburton only asserts method claims in this action. However, Halliburton never refutes Smith's assertion that Halliburton made and sold products protected under the '577 Patent. Instead, Halliburton asserts, without citation, that "when the patent discloses method and apparatus claims, if only method claims are asserted in the lawsuit and only method claims are found to be infringed, then the marking limitation does not apply." Halliburton's Motion to Dismiss (Docket No. 152), p. 4.

Where a patent contains both method and apparatus claims, and there is a tangible item by which notice of the asserted method can be given, the patentee must mark the tangible item to comply with the Marking statute, 35 U.S.C. § 287. *American Medical Systems, Inc. v. Medical Engineering Corp.,* 6 F.3d 1523, 1538–39 (Fed.Cir.1993); *Honeywell International Inc. v. Hamilton Sundstrand Corp.,* 2001 WL 66345, *4 (D.Del.2001); *Mosel Vitelic*

*Corp. v. Micron Technology, Inc.,* 2000 WL 1728351 (D.Del.2000) (holding that "the only time that the notice provisions of the federal statute do not come into play is when the patent is directed to *only* a method or process"). The Federal Circuit set forth this principle in *American Medical Systems* by declaring:

> The purpose behind the marking statute is to encourage the patentee to give notice to the public of the patent. The reason that the marking statute does not apply to method claims is that, ordinarily, where the patent claims are directed to only a method or process there is nothing to mark. Where the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted claims may be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).

6 F.3d at 1538–39.

In the present case, there is no evidence that Halliburton marked products covered by the '577 before it filed suit. As noted above, Halliburton does not deny that it produced and sold tangible items covered by the '577 Patent. Also, the summary judgment evidence does not indicate when Halliburton begin marking products with the '577 Patent number. Unlike the '262 and '225 Patents, Halliburton provided no summary judgment evidence indicating when, if ever, it began to mark products with the '577 Patent number. Moreover, a deposition attached to Smith's motion indicates that the '577 Patent was not marked along with the '262 and '225 Patents in late July 2002. Under *American Medical Systems* Halliburton should have marked its products with the '557 Patent number because Halliburton distributed tangible items created by the '557 methods and by which Halliburton could have given notice

of the '557 Patent's method claims. Because Halliburton has presented no evidence that it marked products with the '557 Patent number, the Court grants Smith's motion regarding the '577 patent and holds that Halliburton cannot recover damages until the filing of suit gave actual notice of alleged infringement to Smith. 35 U.S.C. § 287(a); *American Medical Systems, Inc.*, 6 F.3d at 1528–39.

## CONCLUSION

In sum, the Court finds that Halliburton has presented sufficient summary judgment evidence to overcome Smith's motion regarding the '262 and '225 Patents but has presented no evidence to overcome the motion regarding the '577 Patent. Although the Court has found sufficient summary judgment evidence to raise a fact issue that Halliburton began shipping products marked with the '225 and '262 patent numbers in late July, the evidence does not suggest a firm date. Thus, to simplify evidentiary presentation and damages calculations, the Court accepts Halliburton's stipulation that damages on the '225 and '262 Patents begin accruing on August 1, 2002. However, the Court does so without prejudice to Smith to present evidence at trial that Halliburton did not ship marked products until a later date. Additionally, the Court holds that damages on the '577 Patent began accruing when suit was filed on September 6, 2002.